A07A2238. LUTHER et al. v. LUTHER.
(657 SE2d 574)

MIKELL, Judge.

Jacquelyn F. Luther (the "plaintiff") moved the superior court to enjoin her siblings Carol Luther, Lucius Luther, and Bryan Emmanuel Luther (the "defendants"), from enforcing an alleged wrongful revocation by their mother, Dr. Beatrice Luther, of plaintiff's authority under a durable health care power of attorney. Following an evidentiary hearing, the trial court granted plaintiff's motion. The defendants appeal, claiming that the trial court erred in (i) finding that plaintiff did not have an adequate remedy at law; (ii) allowing plaintiff to proceed in her individual capacity, failing to appoint a guardian ad litem for Dr. Luther, and not allowing Dr. Luther to testify; (iii) concluding that Dr. Luther did not voluntarily execute the revocation; and (iv) issuing a final order which addressed matters beyond the scope of plaintiff's authority under power of attorney. For the reasons that follow, we disagree and affirm.

Viewed in a light most favorable to the trial court's findings, the evidence shows that on November 10, 2003, Dr. Luther appointed plaintiff as her agent in matters of her "personal care, medical treatment, hospitalization, and health care" pursuant to a durable power of attorney for health care. The health care power of attorney provided that it "may be amended or revoked by you at any time or in any manner while you are able to do so," but did not provide for termination if the principal became disabled, incapacitated, or incompetent. On that same date, Dr. Luther also appointed plaintiff as her attorney-in-fact under a separate durable power of attorney granting plaintiff "the fullest and broadest powers to act for me and on my behalf."

In February 2006, plaintiff arranged for in-home care for Dr. Luther, who was suffering from Alzheimer's disease. In June 2006, Carol Luther took Dr. Luther from Dr. Luther's home to Carol Luther's home. After plaintiff sued Carol Luther to compel her to return Dr. Luther, Carol Luther returned Dr. Luther to her Fulton County home pursuant to a consent order. The consent order was scheduled to remain in effect for 30 days from June 30, 2006, and was not extended.

In late September 2006, without authority or direction from Dr. Luther, Carol Luther arranged for a lawyer to prepare a document entitled "Revocation of Power of Attorney," which purported to terminate plaintiff as Dr. Luther's agent under the power of attorney. On the morning of October 2, 2006, Bryan Luther, Lucius Luther, and the Reverend Lucius Luther, Sr., Dr. Luther's ex-husband and father to plaintiff and the defendants, ate breakfast at Carol Luther's home. The three men then drove to Dr. Luther's house, where Bryan and Lucius removed Dr. Luther from her home. According to the nurse's assistant, Dr. Luther did not leave voluntarily, but one of the men grabbed Dr. Luther by the shoulder and "just took her on out the door." The men failed to take Dr. Luther's medication, cane, or purse with them.

That same day, Carol Luther located a notary and provided the notary with Dr. Luther's passport for purposes of identification. Dr. Luther signed the revocation of power of attorney, which was witnessed by the notary, Bryan Luther, and Lucius Luther. Carol Luther and Lucius Luther then took their mother to her bank, where they closed Dr. Luther's accounts. The following day, October 3, 2006, Rev. Luther, Bryan Luther, and Lucius Luther transported Dr. Luther out of the state.

Also on October 3, plaintiff filed this action seeking an emergency motion for injunctive relief. On October 6, 2006, the trial court declared the revocation of the power of attorney null and void, and ordered appellants to return Dr. Luther to her home in Georgia. During the subsequent permanent injunction hearing, the trial court heard extensive testimony, including that of Dr. Luther's physician, Dr. Miguel Stubbs.

According to Dr. Stubbs, Dr. Luther suffered from moderate to severe dementia. Dr. Luther was in need of 24-hour supervision; otherwise, according to Dr. Stubbs, "she could decide that she wants to open the door and walk out and forget where she lived at." In a separate affidavit, Dr. Stubbs opined that Dr. Luther's cognitive tests "translate[ ] into not knowing what she did . . . whether or not she told someone something, whether or not she signed something, whether or not she knows where she is." Dr. Stubbs testified that Dr. Luther was unable to understand either the implication of a legal document

or the meaning of her signature on a legal document. In Dr. Stubbs's professional opinion, if Dr. Luther had been presented with a legal document on October 2, 2006, she would not have had the capacity to understand what she was signing.

In the final order,[1] the trial court found that the actions of defendants in planning and removing Dr. Luther from her home were wrongful and interfered with Dr. Luther's medical care in violation of the authority vested in the plaintiff. The trial court also found Dr. Luther did not voluntarily revoke the powers of attorney granted to the plaintiff because she had been taken from her home and because she lacked the mental capacity and competency to execute the revocation. The trial court ordered that the revocation be set aside as null and void and enjoined defendants from, among other things, harassing, intimidating, and interfering with the plaintiff's decisions and exercise of her duties under power of attorney.

1. Defendants contend that plaintiff had an adequate remedy at law, and that the trial court therefore erred in determining that it had equity jurisdiction. We disagree.

> Equity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done.[2]

Thus, "[e]quity will grant relief only where there is no available adequate and complete remedy at law."[3] As otherwise stated, "[e]quitable relief is improper if the complainant has a remedy at law which is adequate, i.e., as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity."[4]

---

[1] Lucius Luther and Bryan Luther failed to file an answer within 30 days of the date of service of process. However,

[w]hile in a civil action, not in equity, where the case is in default, the plaintiff is entitled to a default judgment as a matter of law without the introduction of any evidence except as to unliquidated damages, yet in equity cases which involve harsher remedies a determination must be first made that, admitting every allegation as true, the plaintiff is entitled to the relief sought. This presents a question of law for the court. Once such a determination has been made that, accepting the allegations of the plaintiff's claim as true, he is entitled to a decree, then such decree must be entered.

(Citation and punctuation omitted.) *Wallace v. Lewis*, 253 Ga. App. 268, 269 (558 SE2d 810) (2002).

[2] OCGA § 23-1-3.

[3] (Citations omitted.) *Cantrell v. Henry County*, 250 Ga. 822, 824 (1) (301 SE2d 870) (1983).

[4] (Citation and punctuation omitted.) *Besser v. Rule*, 270 Ga. 473, 475 (510 SE2d 530) (1999).

Defendants maintain that plaintiff had an adequate remedy through a petition for the appointment of an emergency guardian for Dr. Luther.[5] However, a petition for the appointment of an emergency guardian must set forth "[t]he fact that no other person appears to have authority and willingness to act in the circumstances, whether under a power of attorney, trust, or otherwise."[6] It was plaintiff's position that she did have the authority to act for Dr. Luther. Defendants fail to demonstrate a legal remedy which was "adequate and complete" to address defendants' ongoing interference with Dr. Luther's decision to appoint plaintiff as her health care agent.[7] Accordingly, the trial court did not err in finding that it had equity jurisdiction to provide injunctive relief.

2. Defendants further contend that the trial court erred in proceeding without adequately protecting the interests of Dr. Luther. Specifically, defendants claim that the trial court erred in allowing the plaintiff to proceed in her individual capacity, in not providing a guardian ad litem to represent Dr. Luther's interests, and in not allowing Dr. Luther to testify.

(a) Defendants contend that the trial court erred in allowing plaintiff to proceed in her individual capacity. Carol Luther's attorney first raised the issue at the commencement of the hearing, arguing that the action should have been brought by plaintiff as agent for Dr. Luther. The trial court offered to allow plaintiff to cure any defect by adding "Jacquelyn Luther under power of attorney of Beatrice Luther" because "that's essentially what the parties are," but did not require the express addition of a party.[8]

"Every action shall be prosecuted in the name of the real party in interest."[9] For this purpose, "[t]he real party in interest is the person, who, by the substantive governing law, has the right sought to be enforced."[10] We agree with defendants that Dr. Luther has substantive rights which the underlying claim sought to enforce, and thus was a real party in interest. The Durable Power of Attorney for Health Care Act recognized that the individual has the right to "control all aspects of his or her personal care and medical treatment" and that the principal's right to control treatment may be denied if the

---

[5] See OCGA § 29-4-14.

[6] OCGA § 29-4-14 (b) (6).

[7] See, e.g., *Sherrer v. Hale*, 248 Ga. 793, 797-798 (2) (285 SE2d 714) (1982) (as plaintiff's loss not compensable in damages, equitable relief was proper).

[8] After discussion with the trial court, Carol Luther's attorney agreed that it was her position that the case be brought as "Jacquelyn Luther under power of attorney of Beatrice Luther," in addition to Jacquelyn Luther.

[9] OCGA § 9-11-17 (a).

[10] (Citations and punctuation omitted.) *Golden Pantry Food Stores v. Lay Bros., Inc.*, 266 Ga. App. 645, 651 (3) (597 SE2d 659) (2004).

principal becomes disabled, incapacitated, or incompetent unless the individual, as principal, could delegate the decision-making power to a trusted agent.[11] The Act is intended to protect the rights of the principal to control his or her own care and is not intended to benefit the agent personally.

Plaintiff admits that the complaint should have reflected that she was proceeding in a representative capacity, but contends the issue was waived. We disagree inasmuch as a real-party-in-interest objection may be made at any time up to and including a trial on the merits.[12] Nevertheless, we need not reverse on this account. A real-party-in-interest objection is a matter in abatement and does not go to the merits of the case.[13] Rather, "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest."[14] Inasmuch as the trial court found that Jacquelyn Luther under power of attorney of Beatrice Luther was essentially a party to the case, we see no prejudice to the defendants by requiring that this party be added to show that plaintiff was proceeding in a representative capacity. "Parties may be added by the court on its own initiative at any stage of the litigation, including appeal."[15] Accordingly, we direct the trial court to add "Jacquelyn Luther under power of attorney of Beatrice Luther" as a party plaintiff upon remittitur.

(b) Defendants also contend that the trial court erred by not appointing a guardian ad litem to protect the interests of Dr. Luther. OCGA § 9-11-17 (c) provides that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." The appointment of a guardian ad litem under this provision is within the discretion of the trial court.[16] We find no abuse of discretion here. In response to Carol Luther's claim that plaintiff could not proceed in her individual capacity, the trial court noted that "I don't have any problem with [the plaintiff] being before the court right now because [plaintiff is] the guardian [of Dr. Luther] so to speak. And under this

[11] Code 1981, § 31-36-2, enacted by Ga. L. 1990, p. 1101, § 1. Chapter 36 of Title 31, relating to durable power of attorney for health care, was repealed by Ga. L. 2007, p. 133, § 3, effective July 1, 2007.

[12] *Rigdon v. Walker Sales & Svc.*, 161 Ga. App. 459, 462 (2) (f) (288 SE2d 711) (1982).

[13] Id.

[14] OCGA § 9-11-17 (a).

[15] (Citation omitted.) *Dept. of Ed. v. Kitchens*, 193 Ga. App. 229 (1) (387 SE2d 579) (1989).

[16] *Dee v. Sweet*, 224 Ga. App. 285, 287 (1) (480 SE2d 316) (1997).

power of attorney, [plaintiff has] certain rights and responsibilities." Thus, pretermitting whether Dr. Luther was an incompetent person for purposes of OCGA § 9-11-17 (c), the trial court implicitly determined that Dr. Luther was adequately represented in the action by the plaintiff. We note that the defendants do not show that they moved for the appointment of a guardian ad litem to represent Dr. Luther, and they should not benefit from the failure to assert the issue below.[17] Furthermore, the record fails to show that Dr. Luther's interests "were not fully protected or that by the formal appointment of a guardian ad litem a different result would have been reached by the [trial] court on any of its rulings."[18]

(c) The trial court did not err in refusing to allow Dr. Luther to testify. When the defendants suggested that the trial court consider Dr. Luther's testimony, the trial court responded that in light of the evidence, including the medical doctor's testimony, he was satisfied that Dr. Luther was not competent and that he would therefore not hear from her. As a rule, "[t]he competency of a witness shall be decided by the court, and the decision of the trial court will not be disturbed unless there is an abuse of discretion."[19] While the determination of competency must be performed by examination, it does not necessarily have to be through personal examination of the prospective witness, such as "where a doctor might testify under oath and subject to cross examination that the witness was totally irrational."[20] Given the evidence of Dr. Luther's seriously impaired mental capacity, we cannot conclude that the trial court abused its discretion in determining that Dr. Luther was not competent and in refusing to allow the defendants to present her as a witness.

3. Defendants claim the trial court erred in finding that Dr. Luther "could not voluntarily execute the revocation inasmuch as she was taken from her home." They make no argument as to this claim of error other than to cite to the revocation provision of the Durable Power of Attorney for Health Care Act, which provided:

Every health care agency may be revoked by the principal at any time, without regard to the principal's mental or physical condition, by any of the following methods: . . . a written

---

[17] See, e.g., *O'Neil v. Moore*, 118 Ga. App. 424, 428 (2) (164 SE2d 328) (1968) (Civil Practice Act intended to prevent going to trial and gambling on verdict when known defense is available).

[18] Id.

[19] (Citation and punctuation omitted.) *Flynn v. State*, 255 Ga. 415, 419 (7) (339 SE2d 259) (1986).

[20] (Emphasis omitted.) *Cofield v. State*, 247 Ga. 98, 106 (3) (274 SE2d 530) (1981); OCGA § 24-9-7 (a).

revocation of the agency signed and dated by the principal or by a person acting at the direction of the principal.[21]

Although the trial court concluded that Dr. Luther signed the revocation of power of attorney, the trial court also found that "the actions of . . . the [defendants] in making plans and removing [Dr. Luther] from her home by *force* . . . was wrongful,"[22] and that appellants knew or should have known that Dr. Luther, "having been diagnosed with dementia since 2005, lacked the mental capacity and competency to execute the purported revocation on October 2, 2006." In light of these findings, which were authorized by the evidence, the trial court was entitled to conclude that Dr. Luther did not voluntarily execute the revocation of power of attorney notwithstanding that her signature appears on the document. "[A]n appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them."[23]

4. The defendants claim that the trial court erred in entering a final order which addressed matters beyond the scope of plaintiff's authority as Dr. Luther's health care agent. Specifically, defendants argue that the trial court erred in enjoining them "from interfering and meddling in any and all of the financial, personal and business affairs of [Dr. Luther] without the express authority of the Plaintiff."

In addition to the durable health care power of attorney, Dr. Luther had appointed plaintiff her agent with "the fullest and broadest powers to act for me and on my behalf," including authority to open and maintain bank accounts. Evidence showed that plaintiff had been paying Dr. Luther's bills since 2004. The trial court found that appellants Carol Luther and Lucius Luther took Dr. Luther into her bank for the purpose of interfering with the plaintiff's authority over Dr. Luther's financial affairs by causing Dr. Luther to close her accounts, which resulted in Dr. Luther's mortgage and other monthly bills being rejected for payment. Accordingly, the scope of the injunction was authorized by the evidence. "Where equity acquires jurisdiction for any purpose it will retain jurisdiction to give full and

---

[21] Code 1981, § 31-36-6 (a), enacted by Ga. L. 1990, p. 1104, § 1. The two other methods of revocation of a health care agency provided by the statute were "[b]y being obliterated, burned, torn, or otherwise destroyed or defaced in a manner indicating an intention to revoke," and "[b]y an oral or any other expression of the intent to revoke the agency in the presence of a witness 18 years of age or older who, within 30 days of the expression of such intent, signs and dates a writing confirming that such expression of intent was made." Id.

[22] (Emphasis supplied.)

[23] (Citations and punctuation omitted.) *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693 (527 SE2d 293) (1999).

complete relief, whether legal or equitable, as to all purposes relating to the subject matter."[24]

*Judgment affirmed with direction. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 31, 2008

*Millard C. Farmer, Jr.*, for appellants.
*Jacquelyn F. Luther, Celeste F. Brewer*, for appellee.

---

[24] (Citation omitted.) *Early v. Early*, 243 Ga. 125, 126 (1) (252 SE2d 618) (1979).
[1] See *McGee v. State*, 287 Ga. App. 460 (651 SE2d 546) (2007).
[2] See id.
[3] See id.