S12A1492. BARNGROVER v. CITY OF COLUMBUS.
(739 SE2d 377)

BENHAM, Justice.

This appeal marks the second time a Georgia appellate court has reviewed actions taken by the trial court in this nearly 20-year-old litigation between the City of Columbus and the owner of real property within its boundaries. In 1999, a jury awarded monetary damages and equitable relief, i.e., remediation of the property, to homeowner Kenneth Barngrover. The monetary damages were paid into the registry of the trial court shortly after entry of judgment on

---

the jury's verdict, and the Court of Appeals affirmed the judgment in favor of Barngrover in 2001. *City of Columbus v. Barngrover*, 250 Ga. App. 589 (552 SE2d 536) (2001). It is the 2011 judicial resolution of the equitable features of the jury's verdict that is now at issue.

In February 1993, appellant, the owner of improved real property in the City of Columbus, filed suit seeking monetary and equitable relief for inverse condemnation and a continuing nuisance and trespass on his property resulting in sinkholes and the presence of fecal coliform bacteria allegedly caused by leakage from the City's network of storm water and sewage pipes running under the Barngrover property. In August 1999, the jury returned a verdict in favor of Barngrover, awarding him $237,000 in damages and directing the City to "abate the drainage system away from the house [and] repair the house to its 1991 condition." In its judgment entered September 1, 1999, the trial court ordered the City to abate all nuisances created, maintained, and in existence on Barngrover's property and directed the City to remove all nuisances, pipes, and damages to the Barngrover property caused by all nuisances, and to repair, renovate, and restore the houses and real estate to their 1991 undamaged condition. The trial court expressly retained jurisdiction of the case pursuant to its equitable power to ensure completion of the equitable remedy. A week later, the trial court issued an order clarifying that the nuisances to be abated were only those "identified by the jury in its verdict" and that "[a]batement of the drainage system away from the house of [Barngrover] involves stopping the flow of storm water in the pipes under said house or its carport or swimming pool area. . . ." Following the City's submission in September 1999 of plans to implement the injunctive relief, the trial court issued an order in December 1999 rejecting the City's plan and ordering the City to remove from Barngrover's property all nuisances, pipes, and damages caused by the nuisances; to abate the drainage system away from Barngrover's property by re-routing and removing the storm water sewers and sanitary sewers traversing Barngrover's property, with the exception of one specified sewer line to which only a sanitary sewer line serving Barngrover's structures could be connected, with necessary sewer-line connections for neighboring properties being made without crossing, abutting, or coming onto Barngrover's property; and to repair, renovate, and restore the houses, premises, and real estate to their 1991 undamaged condition.

After several years of entering various orders in an effort to provide the equitable relief required by the jury's verdict,[1] the trial court appointed a special master in January 2007 to enforce the December 1999 judgment. In April 2011, the special master noted that the structures on the Barngrover property were beyond repair and recommended they be razed and replaced with a new structure built at a cost not to exceed $150 per square foot. The special master also recommended implementation of the City's plan directing the drain pipe system away from the Barngrover house to the rear property lines, an alternative the special master found to be considerably less expensive and much less disruptive to the neighborhood than Barngrover's proposal which kept all lines from adjacent neighbors from traversing Barngrover's property.

Barngrover filed objections to the special master's report and a motion to replace the special master. After a hearing concerning Barngrover's objections and his motion, the trial court entered an order adopting the recommendation of the special master with regard to the equitable relief, i.e., the remediation of the property, and entering judgment thereon. In so doing, the trial court ordered that the structures on the property be razed and rebuilt since they now were beyond repair; that the property be cleared of debris and trash; that soil contaminated by fecal coliform or otherwise damaged by the leakage of sewer or storm water be removed and replaced; and that

---

[1] In February 2002, the trial court found it "economically impractical and unfeasable" to remediate and repair Barngrover's property to its 1991 condition as previously ordered and, having considered independent appraisals of the property submitted by the parties, determined that the fair market value of the property was $750,000. The trial court offered Barngrover several options, including selling the property to the City for $750,000 and, should Barngrover not make an election, the City would be allowed to remove and/or re-route the pipes traversing the property so as to intrude minimally on the property. In November 2006, citing a need for the matter to be concluded and exercising its equity jurisdiction, the trial court ordered the City to pay $675,000 into the court's registry for the Barngrover property and ordered Barngrover to convey title to the City. If Barngrover did not accept the offer, the City was to repair the property, with costs not to exceed 62 percent of the offer. In January 2007, the trial court, noting that Barngrover had elected to have the house repaired, set aside the November 2006 order and appointed a special master to enforce the December 1999 order. On March 12, 2010, the trial judge transferred the case to another judge and, in an order entered one minute after the transfer order, the transferring judge rejected the City's plan routing storm water and sanitary sewer lines from adjacent properties through Barngrover's property as being in violation of the September 1999 judgment and the December 1999 order as not in compliance with the jury's verdict and as violative of the ruling of the Court of Appeals in *City of Columbus v. Barngrover*, supra, 250 Ga. App. 589. In that order, the transferring judge approved an alternate proposal that re-routed all the storm water and sanitary sewer lines for $11,510,215 and that rebuilt the Barngrover home and pool for $2,414,065, finding the proposed costs to be reasonable, necessary and proper. In a handwritten addendum, the transferring judge made the order conditional upon a hearing before the newly-assigned judge concerning the City's objections. After conducting a hearing, the newly-assigned judge set aside and vacated the former trial judge's March 12 order and ordered the parties to take part in mediation (April 2010 order).

the new drainage system, i.e., new sewer and storm water pipes, be run away from the house to the rear property line and then across adjoining property over which the City had obtained an easement.

In this appeal timely filed from the entry of the July 2011 order, Barngrover contends the trial court erred when it entered the July 2011 order, when it set aside an earlier judge's order in April 2010, and when it denied Barngrover's motion to remove and replace the special master and set aside his report.

1. The July 2011 order resolved the equitable features of the jury verdict that "the City abate the drainage system away from the house [and] repair the house to its 1991 condition." The trial court had a duty to enter a judgment that conformed to the jury's verdict (*Holmes v. Henderson*, 274 Ga. 8 (2) (a) (549 SE2d 81) (2001)), and the trial court had broad discretion to fashion an equitable remedy based upon the exigencies of the case. *Goode v. Mountain Lake Investments*, 271 Ga. 722, 724 (524 SE2d 229) (1999). See also *Luther v. Luther*, 289 Ga. App. 428, 434-435 (657 SE2d 574) (2008) ("Where equity acquires jurisdiction for any purpose it will retain jurisdiction to give full and complete relief. . . ."). Thus, the trial court, which had expressly retained jurisdiction of the case to ensure completion of the equitable portion of the jury's verdict, had the discretion to fashion a remedy that required razing and rebuilding the house when it was no longer feasible to repair it and that routed the drainage system away from the house's location but under a portion of the Barngrover property when it became financially unfeasible and disruptive to the entire neighborhood to route the drainage system that currently traverses the Barngrover property so that it no longer crossed the Barngrover property. The jury's verdict required the City to abate the drainage system which ran under the Barngrovers' home, away from the house; the jury's verdict did not require that the City remove the drainage system from the Barngrover property. That the Court of Appeals affirmed the 1999 judgment did not bar the trial court from amending the judgment so that it conforms to the jury verdict. See *Kerr v. Noble*, 124 Ga. App. 722 (1) (185 SE2d 807) (1971). That the jury's equitable remediation verdict effectively revoked the City's existing pipeline easements through Barngrover's property and re-directed said pipelines and easements through another portion of Barngrover's property is not an illegal exercise of the power of eminent domain, is not an illegal seizure of Barngrover's property, and is not a violation of Barngrover's right to equal protection of the laws.

Equitable relief generally is a matter within the sound discretion of the trial court, and an appellate court sustains the trial court's action where such discretion has not been abused. *Essex Group v. Southwire Co.*, 269 Ga. 553 (2) (501 SE2d 501) (1998). There being no

showing that the trial court abused its discretion in resolving the equitable features of the jury's verdict, we sustain the trial court's action.

2. Appellant Barngrover contends the special master's removal was warranted because the special master was unqualified to oversee construction, his recommendation purportedly violated Barngover's constitutional rights, and his recommendation purportedly exceeded the scope of his duties set forth in the 2007 order appointing him. The trial court was authorized to refer a portion of the litigation to a special master (Uniform Superior Court Rule 46), and the exercise of the trial court's discretion will not be interfered with by appellate courts absent an abuse of discretion. See *Alston & Bird v. Mellon Ventures*, 307 Ga. App. 640 (6) (a) (706 SE2d 652) (2010). Appellant voiced no objection to the special master's qualifications in the 51 months between the special master's appointment and the special master's report and recommendation, finding fault with the special master only after the special master issued his recommendation. Appellant has not established that the trial court abused its discretion when it appointed the special master.

3. Appellant argues the trial court erred when, in April 2010, it vacated the March 2010 order issued by the first judge to whom the case had been assigned. Appellant seeks reinstatement of the March 2010 order. However, the March 2010 order stated it was conditional upon the newly-assigned judge holding a hearing on the City's objections to the order, and the new judge set aside and vacated the former judge's order after holding a hearing on the City's motion to set aside the order. The content of the March 2010 order makes it clear the newly-assigned judge did not err when it vacated the former judge's order.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 4, 2013.

*James D. Patrick, Jr.*, for appellant.
*Clifton C. Fay, Lucy T. Sheftall, Page, Scrantom, Sprouse, Tucker & Ford, James C. Clark, Jr., Alan G. Snipes, Thomas F. Gristina*, for appellee.