In the Supreme Court of Georgia

Decided: June 15, 2015

S15A0183. TAFEL v. LION ANTIQUE CARS & INVESTMENTS, INC., a/k/a LION ANTIQUE INVESTMENTS & CONSULTING SERVICES, INC.

S15X0184. LION ANTIQUE CARS & INVESTMENTS, INC., a/k/a LION ANTIQUE INVESTMENTS & CONSULTING SERVICES, INC. v. TAFEL.

THOMPSON, Chief Justice.

This appeal and cross-appeal involve a longstanding financial dispute between appellant and cross-appellee, Jim Tafel, and appellee and cross-appellant, Lion Antique Cars & Investments, Inc., involving two Ferrari race cars. In the main appeal, Tafel contends, among other things, that the trial court erred in declining to exercise its equitable powers to mark satisfied a judgment that Lion Antique had obtained against him. In the cross-appeal, Lion Antique argues that the trial court erred in valuing the race cars for purposes of offsetting a part of the judgment that it had obtained against Tafel. For the reasons that follow, we affirm.[1]

1. This controversy stems from a December 2007 "Race Car Loan

---

[1] Contrary to Lion Antique's contention, we conclude that this case falls within our equity jurisdiction. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III.

Agreement," in which Lion Antique agreed to purchase two Ferrari F430 GT race cars and loan them to Tafel for him to race. The agreement provided that Lion Antique would hold title to the race cars; that at the end of the 2008 season, Tafel either had to purchase the race cars or sell them to a third-party; and that the proceeds from any sale would go to Lion Antique, with Tafel being responsible for paying Lion Antique for any difference between the sales price and the original purchase price of the cars.

During the 2008 season, Lion Antique asserted Tafel committed a technical default of the agreement by failing to sufficiently insure the cars and filed suit against Tafel in California. In December 2008, Lion Antique obtained a stipulated judgment against Tafel for about $1.5 million dollars, including $1,443,603.38 as the agreed purchase price of the two race cars.

Shortly thereafter, on January 14, 2009, Lion Antique filed a "Petition for Ne Exeat" against Tafel in Georgia, alleging that Tafel still had possession of the race cars and that Lion Antique had a reasonable fear that he would remove or sell the race cars to its detriment. Lion Antique sought, among other things, an injunction requiring Tafel to surrender the cars to it. Simultaneously, Lion Antique filed a separate action seeking to domesticate the California judgment.

2

The trial court held an emergency hearing on Lion Antique's ne exeat petition, and, on January 20, 2009, issued a "Turnover Order" directing Tafel to turn the race cars over to Lion Antique and ordering Lion Antique to immediately market and sell the cars and to report the sales prices to the court so that those amounts could be deducted from Lion Antique's judgment against Tafel. Tafel turned the race cars over to Lion Antique on January 22, 2009. Thereafter, Lion Antique shipped one of the cars overseas to race and shipped the second car to Nevada where it sat in a garage for the remainder of 2009. On June 29, 2009, Lion Antique's California judgement was domesticated in Georgia.

On April 28, 2010, Tafel filed a motion for satisfaction of judgment, arguing that Lion Antique's judgment against Tafel should be marked satisfied because Lion Antique violated the trial court's Turnover Order by failing to immediately market and sell the race cars. Following a hearing, the trial court issued an order on July 21, 2010, denying Tafel's motion, but agreeing to schedule a jury trial to determine the value of the cars as of the date of the Turnover Order so that the amount of the judgment could be reduced by that amount. The superior court's order also provided that upon completion of the

3

jury trial the court would hear additional evidence in order to rule on the equitable issues raised by Tafel, including whether Lion Antique violated the Turnover Order.

In June 2013, the jury found that the value of the cars as of the date of the Turnover Order was $693,000. Thereafter, in anticipation of a final bench trial on the remaining equitable issues, the trial court allowed the parties to pursue additional discovery. During this discovery period, Tafel obtained a previously unproduced insurance binder which indicated that the race cars had been insured by Lion Antique at the time of the Turnover Order for $450,000 each.

On June 10, 2014, the trial court held a final hearing wherein it considered the remaining equitable issues as well as the appropriate amount by which to offset the judgment. In its final order entered June 30, 2014, the trial court determined, among other things, that subtraction of the fair market value of the race cars as of the date of the Turnover Order from the judgment remedied any damages suffered by Tafel. Saying that the jury's verdict was advisory and that the insurance documents would have been relevant to the jury's deliberation and verdict, the court exercised its "equitable powers" and adjusted the jury's verdict, finding that the combined fair market value of the race cars was

$900,000, an amount which it then offset from the judgment as of the date of the Turnover Order. The trial court ruled that Lion Antique's judgment against Tafel was liquidated and denied Tafel's motion for attorney fees and expenses pursuant to OCGA § 9-15-14 (b).

Case No. S15A0183

2. Tafel contends that a writ of ne exeat may only be used to restrain a person from leaving the State and that the trial court thus erred in the Turnover Order by issuing a writ of ne exeat ordering him to transfer the two race cars to Lion Antique. We find no error in the trial court's Turnover Order, as the trial court did not, in substance, issue a writ of ne exeat.

Tafel correctly notes that OCGA § 23-3-20 says that "[t]he writ of ne exeat shall issue to restrain a person from leaving the jurisdiction of the state" and that it gives five examples of when a person may be restrained from leaving the state, OCGA § 23-3-20 (1)-(5). However, although Lion Antique styled its complaint as a petition for a writ of ne exeat, the substance of its complaint sought the equitable relief of the transfer of the two race cars. Because "'substance, rather than nomenclature, governs pleadings,'" Kuriatnyk v. Kuriatnyk, 286 Ga. 589, 590 (690 SE2d 397) (2010), the style of Lion Antique's

complaint did not bar the trial court from ordering the transfer of the cars pursuant to its equitable powers. Moreover, the appellate record does not contain the transcript of the hearing on the petition for writ of ne exeat. Because Tafel bears the burden to show error and because the transcript is necessary to determine whether the trial court erroneously relied on ne exeat principles in granting relief or properly relied on equitable principles in doing so, we "'must assume . . . that there was sufficient competent evidence to support the trial court's findings,'" and that "'the judgment . . . was correct and affirm.'" Barnwell v. TPCII, LLC, 295 Ga. 153, 154 (758 SE2d 281) (2014) (citations omitted).

3. Tafel next contends that the "Race Car Loan Agreement" is governed by the Uniform Commercial Code, see OCGA § 11-9-101 et seq., and that the trial court erred by not ruling that, under the UCC, when Lion Antique retained the race cars instead of immediately selling them, it accepted the race cars in satisfaction of the judgment. Tafel, however, did not raise this issue below and therefore may not raise it on appeal. See Reliance Trust Co. v. Candler, 294 Ga. 15, 18 (751 SE2d 47) (2013) ("Issues never raised at trial will not be considered for the first time on appeal.").

6

4. Tafel also contends that, even if the UCC does not directly govern the parties' transaction, the trial court, nevertheless, should have applied it under the principle that equity "follows the analogy of the law where no rule [of law] is directly applicable." OCGA § 23-1-6. Tafel says that under OCGA § 11-9-610, a provision of the UCC, and this Court's decision in Contestabile v. Business. Dev. Corp. of Ga., 259 Ga. 783, 783 (387 SE2d 137) (1990) ("Contestabile I"), a creditor forfeits the right to recover a deficiency if it conducts a commercially unreasonable sale of collateral; that Lion Antique's failure to immediately market and sell the cars after taking possession of them was commercially unreasonable; and that the trial court therefore erred in failing to rule that Lion Antique had forfeited its right to enforce the California judgment.

Tafel raised this issue below, but the trial court did not err in failing to follow Tafel's contention. To begin, Contestabile I created confusion by stating that if a foreclosure sale "is determined to be commercially unreasonable, the creditor loses not merely the right to recover a personal judgment against the debtor, but also the right to recover the deficiency." This is the language on which Tafel relies. This Court, however, clarified this part of Contestabile I in a later decision in the same case. See Business Dev. Corp. Of Ga. v.

7

Contestabile, 261 Ga. 886, 886-887 (413 SE2d 447) (1992) ("Contestabile II").

We noted that, under Emmons v. Burkett, 256 Ga. 855 (353 SE2d 908) (1987),

> when a creditor forecloses on secured property without the statutorily required notice to the debtor, or when the creditor conducts a commercially unreasonable sale, a rebuttable presumption is created that the value of the collateral is equal to the indebtedness. The creditor may rebut the presumption by introducing (1) evidence of the fair and reasonable value of the secured property, and (2) evidence that the value of the collateral was less than the debt. If the creditor rebuts the presumption, he may maintain an action against the debtor or guarantor for the deficiency (the difference between the fair and reasonable value of the collateral and the amount of the debt). Any loss suffered by the debtor as a result of the failure to give notice or the commercially unreasonable sale is recoverable under OCGA § 11-9-507 and may be set off against the deficiency.

Contestabile II, 261 Ga. at 886.

> We then explained that Contestabile I
>
> involved a creditor who was seeking to recover against a guarantor after having sold the primary collateral without notice to the debtor or guarantor. The guarantor contended that the collateral had been sold at a commercially unreasonable sale -- below fair market value. We could not ascertain from the record whether the sale was indeed commercially unreasonable and whether the creditor had rebutted the presumption that arises from a commercially unreasonable sale. It appeared, however, that the trial court had not considered the Emmons rebuttable presumption rule. The intent of our opinion was to remand for proceedings consistent with Emmons, supra. Apparently, because we did not restate the entire Emmons rule, the opinion created some confusion. We said that if the creditor conducts a commercially unreasonable sale, he loses the right to

8

> recover the deficiency against the debtor or the guarantor. <u>Contestabile</u>, 259 Ga. at 784. A more complete statement of the rule is: If the creditor conducts a commercially unreasonable sale and does not rebut the presumption that the value of the collateral is equal to the indebtedness, he loses the right to recover the deficiency against the debtor and the guarantor. If the presumption is rebutted, the right to recover the deficiency remains as held in <u>Emmons</u>.

<u>Contestabile II</u>, 261 Ga. at 886-887.

Thus, even assuming that Lion Antique's actions were commercially unreasonable, under the correct UCC rule, Lion Antique did not forfeit its right to recover a deficiency so long as it showed, as the trial court found, that the value of the race cars was less than the judgment.

More importantly, a trial court has "broad discretion to fashion an equitable remedy based upon the exigencies of the case," and "an appellate court sustains the trial court's action where such discretion has not been abused." <u>Barngrover v. City of Columbus</u>, 292 Ga. 486, 489 (739 SE2d 377) (2013). Here, the trial court found that it was equitable for Lion Antique to have its judgment enforced, minus the fair market value of the race cars as of the date of the Turnover Order, and for Tafel to have a credit against that judgment for the value of the race cars as of the date of the Turnover Order, so as to protect him from any possible harm that may have occurred if the value of the race cars

9

dropped between the time of the Turnover Order and the time of an actual sale. This order, in effect, followed the analogy of UCC law, correctly applied as stated in Contestabile II, 261 Ga. at 886-887, that Tafel asked the trial court to follow. We cannot conclude that the trial court abused its discretion in devising this equitable remedy. See Barngrover, 292 Ga. at 489.

5. Tafel claimed that the judgment in favor of Lion Antique should be deemed fully satisfied because Lion Antique had unclean hands by failing to follow the Turnover Order. In rejecting that claim, the trial court said that, instead of now seeking to have the judgment deemed fully satisfied, Tafel should have earlier moved to have Lion Antique held in contempt. The court added that "to the extent that [Tafel] was harmed" by Lion Antique's violation of the Turnover Order, the "harm will be remedied by the determination of the race cars' value as of the Turnover Order and the subtraction from the judgment of the same." The court also said that because Tafel did not file a motion for contempt, "the Court is precluded from making a contempt finding with regard to the alleged violation of the Turnover Order."

Tafel contends that the trial court erred in ruling that, in the absence of a contempt motion by Tafel, it was precluded from finding Lion Antique in

10

contempt of the Turnover Order. Tafel is correct that a trial court may sua sponte raise an issue of contempt. See Chatfield v. Adkins-Chatfield, 282 Ga. 190, 194 (646 SE2d 247) (2007). However, because Tafel never moved to have Lion Antique held in contempt, he may not complain about the trial court's failure to do so on its own motion. See In re Adams, 292 Ga. 617, 617 (740 SE2d 134) (2013) (holding that appellant's contention that the trial judge should have sua sponte recused himself from a contempt proceeding was waived because appellant did not file a motion to recuse); Braley v. State, 276 Ga. 47, 51 (572 SE2d 583) (2002) (holding that, "[b]y failing to object at trial, Appellant waived his right to complain that the trial court, sua sponte, excused a prospective juror"). Moreover, even assuming that the trial court erred in failing to exercise its power to sua sponte address the contempt issue, Tafel must show harm as well as error. See Henderson v. State, 295 Ga. 333, 337 (759 SE2d 827) (2014). Because the trial court did not abuse its discretion in finding that to the extent Tafel was harmed by Lion Antique's violation of the Turnover Order, the proper remedy was the equitable one it had crafted, Tafel cannot show harm from the trial court failing to sua sponte address whether Lion Antique was in contempt of that order.

11

6. Tafel moved for attorney fees under OCGA § 9-15-14. To support the award, Tafel's lead counsel, based on his review of all relevant billing statements, presented a summary of the hours worked by all attorneys and paralegals over the five years of the litigation. The trial court excluded this summary from evidence,[2] and Tafel contends that this was error, saying that the summary was admissible under OCGA § 24-10-1006 of our new Evidence Code.[3] We disagree, as Tafel never made the underlying billing statements available for Lion Antique to review. See OCGA § 24-10-1006 (saying that the

---

[2] Contrary to Tafel's contention, the trial court did not rule that the summary was admissible at the hearing. Instead, after Lion Antique's objection to the summary, the trial court said that it would take "the evidence under consideration" and "enter an order." In its written order, the trial court addressed the parties' arguments about the admissibility of the summary and ruled that it was inadmissible hearsay.

[3] The hearing at which Tafel offered the summary in support of his motion for attorney fees occurred in June 2014, after the new Code's effective date of January 1, 2013. OCGA § 24-10-1006 says:

> The contents of otherwise admissible voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that the contents of such writings, recordings, or photographs be produced in court.

12

party desiring to introduce voluminous material in summary form "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place"); United States v. Arias-Izquierdo, 449 F3d 1168, 1184 (11th Cir. 2006) (saying that under Federal Rule of Evidence 1006,[4] which is identical in material respects to OCGA § 24-10-1006, this requirement must be satisfied "prior to the admission of the summary"); Parker v. State, 296 Ga. 586, 592 (769 SE2d 329) (2015) (saying that "where the new Georgia rules [of evidence] mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance").

7. Tafel raises one other argument, saying that it "deserves mention." The argument concerns the date on which interest on Lion Antique's judgment began

---

[4] Rule 1006 says:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

to accrue. Tafel, however, did not enumerate this issue as error, and the trial court, as Tafel concedes, has never been asked to rule on it. The issue is therefore not properly before us. See Lee v. State, 265 Ga. 112, 116 (454 SE2d 761) (1995) (holding that, because appellant did not raise an "issue in his enumerations of error, we will not consider it on appeal"); Unified Government of Athens-Clarke County v. Stiles Apartments, Inc., 290 Ga. 740, 742 (723 SE2d 681) (2012) (holding that issues that are not ruled on by the trial court may not be raised on appeal).

Case No. S15X0184

8. In its cross-appeal, Lion Antique contends that the trial court was bound by the jury's finding that the value of the race cars was $693,000 and that it therefore erred in finding that the value was $900,000. However, in its final order, the trial court ruled that the jury's verdict was advisory and that it had the "equitable powers" to adjust the value to $900,000 based on evidence presented at the June 10, 2014, hearing. Contrary to Lion Antique's contention, we find no error either in the trial court's conclusion that the jury verdict was advisory or in its adjustment of the value of the race cars. See, e.g., Knott v. Evans, 280 Ga. 515, 515-516 (630 SE2d 402) (2006) (saying that, in an equity case, a trial

14

court has the inherent authority to empanel a jury to find facts and that the jury's findings are advisory and not binding on the trial court). Moreover, at the final hearing, Tafel introduced evidence of the insurance policy in which the "agreed upon" value of the race cars at the time of the Turnover Order was $450,000 each. Tafel argued that Lion Antique had failed to produce the document in time for the jury trial and that the trial court should take this new evidence into account and adjust the jury verdict. Lion Antique made no objection to the trial court's consideration of the insurance documents and did not contend that the jury's verdict was binding. This issue is therefore not properly before us on appeal. See Grissom v. State, 296 Ga. 406, 411 (768 SE2d 494) (2015) (holding that the failure to specifically object to evidence at trial bars appellant from raising that objection on appeal); Reliance Trust Co., 294 Ga. at 18 ("Issues never raised at trial will not be considered for the first time on appeal.").[5]

Judgments affirmed in Case Nos. S15A0183 and S15X0184. All the Justices concur.

---

[5] Contrary to Lion Antique's contention, its objection at the beginning of the final hearing that Tafel had failed to properly plead his claims does not preserve this issue for appeal.

15