**FIRST DIVISION
DOYLE, C. J.,
PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 19, 2015**

# In the Court of Appeals of Georgia

A15A0881. OLYMPUS MEDIA, LLC et al. v. CITY OF DO-042
    DUNWOODY.

A15A0882. CITY OF DUNWOODY v. OLYMPUS MEDIA, LLC  DO-043
    et al.

DOYLE, Chief Judge.

Olympus Media, LLC, and Olympus officer Ray Moyers (collectively "Olympus") filed a declaratory judgment action against the City of Dunwoody seeking to challenge the City's authority to deny it a permit for an existing billboard and to clarify Olympus's rights under sign permits issued pursuant to a consent order with DeKalb County. The City counterclaimed, challenging the lawful existence of the billboard. Following discovery, the parties each moved for summary judgment, and the trial court granted the City's motion and denied Olympus's motion, allowing Olympus the option to modify the existing billboard to conform with an earlier, un-

enhanced version of the billboard as built when the consent order was entered. In Case No. A15A0881, Olympus appeals,[1] and in Case No. A15A0882, the City cross-appeals the trial court's ruling that Olympus (or its predecessor) had not abandoned its rights to the billboard, thereby ruling that Olympus was not required to remove the billboard altogether. For the reasons that follow, we affirm in each case.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

The record is largely undisputed and generally traces a long-running dispute over what type of billboard, if any, is allowed at a particular location. The record shows that in 2001, Action Outdoor Advertizing JV, LLC ("Action"), applied to DeKalb County for permits to erect a number of billboards, including the one at issue

---

[1] Olympus has merged with Fairway Outdoor Advertising, LLC, which is a party to this appeal and is collectively referred to as "Olympus" as appropriate for purposes of this appeal.

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

2

in this case (the "disputed billboard").[3] The application proposed a static sign face measuring 10 feet by 50 feet. The County issued the permit, and, despite the permitted size, Action installed a sign face measuring 14 feet by 48 feet, some 172 square feet larger than the permit allowed.

In November 2001, the County revoked Action's permit for the sign on the ground that the sign, both as permitted and as constructed, exceeded the size allowed by the County's ordinance for a sign in that location. The County's notice of violation explained that under a formula in the applicable County Code section, the maximum area for a sign in that location was calculated to be 132 square feet, based on the limited road frontage at that site. Action appealed the revocation to the Superior Court of DeKalb County, and in 2004, the court sustained the revocation and held that Action had no vested right in the revoked permit because it was issued in

_____

[3] The billboard is located at 4368 N. Peachtree Road, currently in the City of Dunwoody.

violation of the County's zoning requirements.[4] The superior court entered a final judgment that is undisturbed by appeal.

Meanwhile, the disputed billboard remained out of compliance as a static sign advertizing the now-defunct 99X alternative rock FM radio station. Once the permit was revoked, rather than dismantling the sign, Action entered into discussions with the County to preserve the sign and resolve an ongoing dispute with the County over a number of existing and proposed billboards for which Action also had sought permits in 2001. During that time, in January 2006, Metro Brokers realty company began leasing the sign, and two physical changes were made to the sign: a "Metro Mike" cartoon character was added with a moving arm that extended beyond the edge

---

[4] See generally *Corey Outdoor Advertising, Inc. v. Bd. of Zoning Adjustments*, 254 Ga. 221, 225-226 (4) (327 SE2d 178) (1985) ("A permit issued for a use or structure which is forbidden by the ordinance is beyond the power of the officer to issue; consequently, it has no legal status, is invalid, and is itself entirely without power to clothe its holder with any legal rights thereunder. A permit for a use prohibited by a valid zoning ordinance, regulation, or restriction is void, of no effect, and subject to revocation. *This is true although the permit has been issued under a mistake of fact.* The expenditure of even substantial sums in reliance upon a permit found to be void is generally held not to raise an estoppel against its revocation or against enforcement of the ordinance found to be violated by the use or structures maintained pursuant to the permit.") (citation and punctuation omitted; emphasis in original).

of the sign face, and a 5-foot by 20-foot (100 square feet) electronic sign was added to the corner, usually displaying the number of houses on sale in the area.

In February 2008, the superior court entered a consent order to finalize the legal status of all of the unresolved billboard sites, including the disputed billboard. In the order, the court addressed existing billboards and proposed billboards in two different sections. First, the court ordered the removal of five existing billboards. Next, the court ordered the County to issue the necessary permits to allow Action to retain certain signs "as presently constructed." That list included the billboard at issue in this litigation. As built at that time, the disputed billboard was composed of the Metro Brokers sign including the small electronic board.

The consent order also addressed thirty unbuilt billboard sites, and six of those signs were designated with an asterisk:

> The signs to be erected at the locations designated as "*" may be used for digital (LED) electronic signs which shall strictly conform with applicable state and county ordinances, rules, regulations, and statutes. The sign located at 4368 (4362) N. Peachtree Road [the disputed billboard] presently is an electronic sign. DeKalb County will approve, execute and deliver all necessary permit applications required by the Georgia Department of Transportation for LED displays and/or electronic signs as requested by Action Outdoor with respect to these locations.

5

"Digital (LED) electronic signs" feature whole-face LED boards that can change rapidly or display multiple messages in series.[5] The disputed billboard was not designated with an asterisk.

Shortly after the consent order was entered, in 2008, Action applied for and received permits from the County and the Georgia Department of Transportation for the disputed billboard, allowing it to be an indirectly illuminated, electronic, multi-message sign. Relying on these permits, in October 2008, Action rebuilt the billboard so that it could accommodate a five-ton, full-face digital LED board.[6] This re-design included dismantling the existing sign and support pole, installing a stronger pole, and installing new wiring. After completion of the upgrade, Action reinstalled the original, mostly static Metro Broker sign face.

In December 2008, the City of Dunwoody was incorporated, and it purported to adopt certain zoning ordinances.[7] In February 2009, Action's electrical contractor

---

[5] Another type of multi-message board is mechanical, which typically displays pre-printed messages by rotating synchronized multi-faceted panels within the sign face.

[6] The parties refer to this procedure as making the billboard "watchfire ready."

[7] Olympus disputes the validity of sign ordinances adopted prior to 2011, but the trial court did not rule on this issue.

obtained a permit from the City to install certain new electrical equipment. The letter accompanying the permit stated the City's belief at that time that the authority for the sign as proposed had been established by the Consent Order.

In September 2010, Action installed a full-face digital LED sign on the disputed billboard. Later that same month, Action sold the billboard to Olympus.

In October 2010, the City adopted a new sign ordinance and amended it in July 2011. Based on the amended ordinance, the City issued a citation to Olympus for the sign. Before the citation was resolved, Olympus sued the City in the present action, seeking a declaratory judgment clarifying its rights in the disputed billboard. The trial court ruled that the upgraded sign was not authorized by the consent order:

> The Court finds that the replacement of the prior mostly static billboard with a full LED sign face does not comport with the Consent Order. Action Outdoor was allowed to retain the existing sign "as presently constructed[,]" and its vested rights encompassed continued "use and maintenance," not complete replacement with a completely different sign face. All permits issued pursuant to the Consent Order were bound by its terms.

> Having found that the full LED display is illegal, Olympus Media must either revert to the billboard that existed at the time of the Consent Order or remove the billboard entirely. . . [With respect to the City's counterclaim seeking removal altogether based on abandonment,]

7

Action Outdoor and Olympus Media have not abandoned their right to maintain a billboard on the property. Nor does the Court agree with Olympus Media that the Court must determine the validity, applicability, and constitutionality of the City's sign ordinance. The citation issued by the City is irrelevant. The full LED display violates the Consent Order. Olympus Media has a vested right in using and maintaining the sign as it existed in February 2008, and it has no right to challenge the City's ordinances when it has not applied for and been denied a permit.

The City and Olympus now appeal.

*Case No. A15A0881*

1. Olympus first argues that the trial court erred by concluding that the consent order did not authorize the redesigned, full-face LED sign. We disagree.

> A consent order is essentially a binding agreement of the parties that is sanctioned by a court, and it is subject to the rules governing the interpretation and enforcement of contracts. Accordingly, a consent order can be construed according to the general rules of contract construction. Furthermore, where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance.[8]

_____

[8] (Citations and punctuation omitted.) *Corliss Capital, Inc. v. Dally*, 268 Ga. App. 594, 595 (602 SE2d 304) (2004).

"The construction of a contract is a question of law for the court, and we apply a de novo standard of review on appeal."[9]

As summarized above, the consent order in this case was crafted to address a dispute about a number of billboard sites – some existing, some not. The order required some existing signs to be removed, preserved others, and allowed certain new ones to be built. With respect to the disputed billboard, which was an existing sign, the consent order provided as follows: "DeKalb County shall issue sign, building[,] and electrical permits to Action Outdoor to allow it to retain the following existing signs as presently constructed," including the disputed billboard. Given its plain meaning, this language shows an intent by the parties to preserve the status quo as to the disputed sign, allowing Action to maintain it "as presently constructed," i.e., with the static sign face featuring a small electronic board (not a full-face LED multi-message board).

Olympus argues that language elsewhere in the consent order demonstrates an intent by the parties to allow a full-face digital LED sign board. It points to language in the following provision:

---

[9] (Punctuation omitted.) *Immel v. Immel*, 298 Ga. App. 424 (680 SE2d 505) (2009).

9

The signs to be erected at the locations designated as "*" may be used for digital (LED) electronic signs. . . . The sign located at 4368 (4362) N. Peachtree Road presently is an electronic sign. DeKalb County will approve, execute[,] and deliver all necessary permit applications required by the Georgia Department of Transportation for LED displays and/or electronic signs as requested by Action Outdoor with respect to these locations.

Locations 29 and 30 may both be electronic digital signs if the sign located at 7625 Mall Parkway is removed. Otherwise, Action Outdoor may choose between Location 29 or Location 30 for one digital sign and may keep 7625 Mall Parkway as an existing sign.

Although the disputed sign was not designated with an asterisk (which was reserved for "digital (LED) electronic signs"), Olympus argues that the statement that the disputed billboard "presently is an electronic sign," is an acknowledgment that it belongs in the same category and is therefore entitled to permitting for the same full-face digital LED application. But this runs counter to the fact that the consent order uses the term "digital (LED) electronic sign" to refer to the asterisk signs, and it uses a different term, "electronic sign," to refer to the disputed billboard. It also runs counter to the fact that the disputed billboard lacks an asterisk. Further, the provision authorizes permits "for LED displays and/or electronic signs," which shows that the

10

terms "LED display" and "electronic sign" are different concepts. Last, Olympus's construction conflicts with the premise that the disputed billboard was to be permitted "as presently constructed." Thus, Olympus's argument ignores the law's preference for "the construction of the contract which would uphold the contract in whole and in every part, and would not construe one provision of the contract so as to defeat the plain import of another provision."[10]

In sum, the difference in nomenclature ("digital (LED) electronic sign" v. "electronic sign") is a practical reflection of the fact that the sign, as built, had an electronic component, but it was not a full-face digital LED electronic sign. Nothing in the above language shows an intent in the consent order to change the nature of the disputed billboard as built. Accordingly, the trial court correctly concluded that the order did not authorize a conversion of the disputed billboard to a full-face digital LED sign.

2. Olympus next contends that even if the sign is determined to be out of compliance with the consent order, it should remain because (a) the City lacks

---

[10] *Ga. State Financing & Investment Comm. v. XL Speciality Ins. Co.*, 303 Ga. App. 540, 543-544 (1) (694 SE2d 193) (2010), citing OCGA § 13-2-2.

11

standing, and (b) the City's sign ordinances are invalid. As noted above, the trial court did not rule on these issues, instead concluding as follows:

> [The court need not] determine the validity, applicability, and constitutionality of the City's sign ordinance. The citation issued by the City is irrelevant. The full LED display violates the Consent Order. Olympus Media has a vested right in using and maintaining the sign as it existed in February 2008, and it has no right to challenge the City's ordinances when it has not applied for and been denied a permit.

Assigning this as error, Olympus requests this Court to remand the case for determination of these issues.

> In the present context, we are guided by the law of nonconforming uses.

> Nonconforming uses are uses of structures which were existing prior to the enactment of an ordinance rendering them nonconforming. However, our courts have been very careful to distinguish between legal nonconforming uses and illegal nonconforming uses. . . [A] nonconforming use would not be protected unless it appeared that it was lawful at its inception. . . [A] permit issued for either an illegal use or an illegal nonconforming use is void; it cannot be used as an excuse to continue the use in violation of a zoning ordinance, and it does not vest constitutional rights.[11]

---

[11] (Citations and punctuation omitted.) *Corey Outdoor Advertising*, 254 Ga. at 226-227, citing *Ralston Purina Co. v. Acrey*, 220 Ga. 788, 791 (142 SE2d 66) (1965); *Troutman v. Aiken*, 213 Ga. 55 (96 SE2d 585) (1957); *Tucker v. City of Atlanta*, 211

Applied here, this principle demonstrates that the permits issued pursuant to the consent order – which permits allowed a full-face digital LED sign – were void because they permitted a sign not authorized by the consent order (or other law).[12] Accordingly, the trial court correctly held that Olympus cannot rely on those permits to defend the billboard in its present form.[13] But, as noted in Division 1, the consent order remains undisturbed, and Olympus is entitled to rely on its rights as established

Ga. 157 (84 SE2d 362) (1954).

[12] Olympus does not identify any statutory or local law that would authorize the disputed billboard. See, e.g., *Flippen Alliance for Community Empowerment, Inc. v. Brannan*, 267 Ga. App. 134, 137 (2) (601 SE2d 106) (2004) ("[I]t is incumbent upon one seeking to use the property for a non-conforming use after the rezoning ordinance to show that his prior use of the property was legal and not unlawful."), quoting *Troutman*, 213 Ga. at 56.

[13] See *Corey Outdoor Advertising, Inc.*, 254 Ga. at 228 (4); *Matheson v. DeKalb County*, 257 Ga. 48, 49 (3) (354 SE2d 121) (1987); *Flippen Alliance for Community Empowerment, Inc.*, 267 Ga. App. at 138 (2); *DeKalb County v. DRS Investments, Inc.*, 260 Ga. App. 225, 228-229 (2) (581 SE2d 573) (2003). Compare *Fulton County v. Action Outdoor Advertizing, JV, LLC*, 289 Ga. 347, 349 (1) (711 SE2d 682) (2011) (holding that county and cities were correctly ordered to permit sign construction because "in the absence of any valid Fulton County sign ordinance [applicable to the signs at issue at the relevant time], there was no valid restriction on the construction of signs in Fulton County at the time the sign companies' applications were filed, and the sign companies obtained vested rights upon filing of proper applications."). Olympus does not dispute that a valid DeKalb County ordinance applied to the disputed billboard when it was built.

13

in the consent order consistent with this opinion.[14] These rulings render moot Olympus's challenge to the validity of the City's ordinance as applied to the disputed billboard.

With respect to whether the City properly challenges the permits that issued, we note that the case was initiated by Olympus's declaratory judgment action filed against the City, and Olympus explicitly sought to defeat the City's enforcement authority based on an alleged "absolute right" to continue to maintain the upgraded billboard as authorized by the permits issued pursuant to the consent order. Under this procedural posture, the City was entitled to challenge Olympus's assertion in defense of the lawsuit brought against the City by Olympus.

*Case No. A15A0882*

3. In its cross-appeal, the City argues that the trial court erred by failing to rule that Olympus has no rights whatsoever in the billboard because Action abandoned them by dismantling the billboard and upgrading it to accommodate a full-face LED sign. The City relies in part on *Tietjen v. Meldrim*,[15] a case in the context of abandonment of an easement, which provides as follows: "When . . . nonuse[] is

---

[14] The City does not challenge the validity of the consent order itself.

[15] 169 Ga. 678 (151 SE 349) (1930).

14

accompanied by acts manifesting a clear intent to abandon, and which destroy the object for which the easements were created or the means of their enjoyment, an abandonment will take place. The evidence to establish a forfeiture of an easement by abandonment or nonuse[] must be decisive and unequivocal."[16] The City also cites *Ansley House v. City of Atlanta*,[17] which involved the application of a one-year non-use period written into a zoning ordinance to establish abandonment: "[Historically,] the term 'abandonment' was construed to mean the intentional relinquishment of a known right to devote the property to a permitted nonconforming use, evidenced by an overt act or failure to act, sufficient to support the implication of such an intent."[18] Based on these principles, the City argues that Action abandoned the pre-existing use of the Metro Brokers billboard by dismantling it and upgrading it to accommodate a full-face digital LED sign board.

We disagree. Nothing in the act of upgrading the disputed billboard evinces an intent to cease using the billboard for advertizing, whether static, digital, or otherwise. If anything, Action's conduct reflected an intent to *enhance* its use of the

---

[16] Id. at 699.

[17] 260 Ga. 540 (397 SE2d 419) (1990).

[18] (Punctuation omitted.) Id. at 542.

15

disputed billboard, not abandon it. Accordingly, the trial court correctly ruled that

Action had not abandoned any rights it had in the disputed billboard.

*Judgment affirmed. Phipps, P. J., and Boggs, J., concur*.

16