**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**April 12, 2018**

# In the Court of Appeals of Georgia

A18A0653. NORTHLAKE MANOR CONDOMINIUM
ASSOCIATION, INC. v. HARVEST ASSETS, LLC.

BARNES, Presiding Judge.

This is the second appearance of this case before this Court. See *Harvest Assets, LLC v. Northlake Manor Condo. Assn.*, 340 Ga. App. 237 (796 SE2d 319) (2017) ("*Harvest Assets I*"). On remand from our decision in *Harvest Assets I*, the trial court ruled that based on the language of a previously entered consent order and general principles of equity, Plaintiff Northlake Manor Condominium Association, Inc. (the "Association") was not entitled to collect unpaid condominium association assessments from Defendant Harvest Assets, LLC that had accrued during the pendency of the litigation. Consequently, the trial court denied the Association's motion for summary judgment on its claim for unpaid condominium association assessments and granted a declaratory judgment in favor of Defendant Harvest Assets on the same issue. Following entry of final judgment, the Association now appeals,

challenging the trial court's ruling that it could not collect unpaid condominium association assessments that had continued to accrue during the litigation based on the consent order and general equitable principles.[1]

For the reasons discussed more fully below, we agree with the Association that it was entitled to collect the unpaid assessments from Harvest Assets. Accordingly, we reverse the trial court's denial of summary judgment to the Association on its claim for the unpaid assessments, reverse the trial court's grant of a declaratory judgment to Harvest Assets on the same issue, and remand with the direction that the trial court grant summary judgment to the Association on its claim for unpaid assessments and for further action consistent with this opinion.

The factual and procedural history pertinent to the present appeal is not in dispute. On December 3, 2013, the property at issue in this case, a condominium unit that was part of the Association, was sold by the DeKalb County Sheriff for payment

---

[1] See OCGA § 5-6-34 (a) (1) (authorizing direct appeal from a final judgment), 5-6-34 (d) ("Where an appeal is taken under any provision of subsection (a) . . . of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere.").

2

of overdue property taxes. Harvest Assets purchased the tax deed for the property on that same date. The Association, which claimed a lien on the property for unpaid condominium assessments, thereafter sought to redeem the property and requested that Harvest Assets provide it with the redemption price. See OCGA § 48-4-40 (addressing right to redeem property after tax sale by delinquent taxpayer or by other party with interest or lien on subject property).[2] The Association also requested that Harvest Assets pay the condominium association assessments that had accrued on the

_____

[2] As our Supreme Court has explained:

Under OCGA § 48-4-40, the article of the Georgia Code governing redemption of property after a tax sale to satisfy unpaid taxes, a delinquent taxpayer has the right to redeem the property by paying the amount required for redemption at any time within 12 months of the sale and at any time after the sale until the right to redeem is foreclosed by the new owner pursuant to OCGA § 48-4-45 or by the ripening of the purchaser's title through prescription. OCGA § 48-4-48. The right to redeem property sold under a tax execution is conditioned upon the tender of the amount required for redemption[.]

*Community Renewal & Redemption v. Nix*, 288 Ga. 439, 440 (1) (704 SE2d 759) (2011). In addition to the delinquent taxpayer, "any other party holding an interest in or lien on the property" may redeem the property by paying the redemption price to the tax sale purchaser. (Citation and punctuation omitted.) *Land USA, LLC v. Georgia Power Co.*, 297 Ga. 237, 239 (1) (773 SE2d 236) (2015). See *Nat. Tax Funding, L. P. v. Harpagon Co.*, 277 Ga. 41, 42 (1) (586 SE2d 235) (2003) ("After the tax sale, the delinquent taxpayer or any other party holding an interest in or lien on the property may redeem the property by paying to the tax sale purchaser the [redemption price.]"); *Bridges v. Collins-Hooten*, 339 Ga. App. 756, 758-759 (1) (792 SE2d 721) (2016) (discussing redemption of property by creditor of delinquent taxpayer).

3

property since the time of the tax sale. See *Croft v. Fairfield Plantation Property Owners Assn.*, 276 Ga. App. 311, 314 (1) (623 SE2d 531) (2005) (purchaser of property at tax sale liable for homeowners association assessments that accrue upon property after sale, even during time when property might be redeemed).

Harvest Assets paid $5,000 to the Association "to cover the association fees currently due" and "future dues as they come due" on the subject property. Harvest Assets then informed the Association that the redemption price was $15,120, which included the $5,000 that Harvest Assets had paid in condominium association assessments.

The Association disagreed with Harvest Assets that the $5,000 paid in condominium association assessments should be included in the calculation of the redemption price, and on June 13, 2014, the Association tendered to Harvest Assets a lower amount for redemption that did not include the assessments. After Harvest Assets rejected the tender, the Association commenced the present action in August 2014 in which it sought, among other things, to require Harvest Assets to accept the tendered redemption price and to deliver a deed of redemption to the Association.

In February 2015, the Association filed a second amended complaint that added a claim seeking payment from Harvest Assets of all unpaid condominium association

assessments that had continued to accrue on the property during the litigation above the $5,000 in assessments that had already been paid by Harvest Assets, plus late fees, interest, and attorney fees relating to those assessments. The Association also filed a motion for a temporary restraining order seeking to prevent Harvest Assets from taking steps to foreclose on the Association's right to redeem the property. See OCGA § 48-4-45 (a) ("After 12 months from the date of a tax sale, the purchaser at the sale or his heirs, successors, or assigns may terminate, foreclose, divest, and forever bar the right to redeem the property from the sale by causing a notice or notices of the foreclosure, as provided for in this article[.]").

On March 20, 2015, while cross-motions for summary judgment on the issue of the right of redemption were pending, the parties entered into a consent order that enjoined Harvest Assets from taking steps to foreclose on the Association's right to redeem the property until further order of the court or until the case had been resolved (the "Consent Order"). The Consent Order further provided that the Association

> until resolution of this case, . . . shall take no action outside the confines of this case to collect or otherwise enforce its claim to condominium assessments or related charges, nor will late charges or interest on Assessments be enforced from the date of [the Association's] attempted tender on June 14, 2014. Additionally no attorney[] fees shall accrue for collection of condominium assessments until resolution of the pending

5

motions for summary judgment, but this provision shall not impair [the Association's] right to present to the Court for consideration, in the ordinary course of the litigation, attorney[] fees related to the issues included in the [complaint]. The routinely mailed notices from [the Association's] management company to [Harvest Assets] of monthly and special assessments levied against all unit owners or charges added to the invoice automatically by the management company sent in the ordinary course of business shall not be in violation of this Order.

Subsequently, the trial court ruled on summary judgment that the Association's tender to Harvest Assets was proper and that the $5,000 in condominium association assessments paid by Harvest Assets after the tax sale were not "special assessments" that should be included in the redemption price under OCGA § 48-4-42. Harvest Assets appealed to this Court, which reversed the trial court and remanded for further proceedings. See *Harvest Assets I*, 340 Ga. App. at 237-238. We held that "special assessments" under OCGA § 48-4-42 include condominium association assessments paid by a tax sale purchaser, and that a tax sale purchaser is entitled to repayment of those assessments as part of the redemption price. See id. Thus, we concluded that Harvest Assets was entitled to the condominium association assessments it had paid to the Association after the tax sale as part of the redemption price. See id. However, we further concluded that the $5,000 amount sought by Harvest Assets for

6

condominium association assessments was too high because it included attorney fees and interest related to late payments that should not have been included in the redemption price. See id. at 238. Consequently, we remanded the case to the trial court to determine what portion of the $5,000 should be allocated to attorney fees and interest and thus not be included in the redemption price that had to be paid by the Association. See id.

Following remittitur, however, counsel for the Association informed counsel for Harvest Assets in March 2017 that based on "the economics of the matter," the Association's board members had decided "to drop their attempt to redeem the parcel" and only pursue their claim for unpaid condominium association assessments that had continued to accrue during the litigation. The Association thereafter voluntarily dismissed the count of its complaint seeking to redeem the property from Harvest Assets. After the Association indicated that it no longer sought to redeem the property and would only be pursuing its claim for unpaid condominium association assessments, Harvest Assets amended its answer to add a counterclaim for declaratory relief and filed a motion seeking the entry of a declaratory judgment that, among other things, it would be inequitable for it to have to pay the accrued assessments.

The Association thereafter moved for summary judgment on several issues, including its claim seeking to collect from Harvest Assets the unpaid condominium association assessments that had accrued on the property during the lawsuit above the $5,000 already paid by Harvest Assets for assessments after the tax sale. The Association also sought interest and late charges on the unpaid assessments and attorney fees. In support of its motion, the Association submitted the affidavit of its current president, former treasurer, and board member detailing the condominium association assessments and other charges that had accrued on the property during the litigation.

Harvest Assets opposed the Association's motion for summary judgment, contending that the Association should not be permitted to collect the unpaid condominium association assessments and late fees, interest, and attorney fees under the language of the Consent Order. Harvest Assets further argued that it would be inequitable to permit the Association to collect the assessments for the time period when the issue of the redemption price was being litigated and Harvest Assets was prevented from foreclosing on the right to redemption, given that the Association ultimately withdrew its claim for redemption of the property.

8

On June 19, 2017, the trial court entered an order that, among other things, denied the Association's motion for summary judgment on its claim for unpaid condominium assessments, late fees, interest, and attorney fees, and granted Harvest Assets's motion for a declaratory judgment on the same issue (the "June 2017 Order"). The trial court explained:

> [The Association] is barred from collecting said Assessments and related charges from [Harvest Assets] under the very language of the Consent Order entered by the Court in March 2015. Any other conclusion would be inequitable given that such a finding would allow [the Association] to: (1) hold [Harvest Assets's] right to foreclose in abeyance throughout this litigation while asserting a right to redeem the Property; (2) reverse its decision to redeem the Property after receiving an unfavorable ruling from the Court of Appeals and after years of pursuing such right/claim for relief; and (3) receive all past due Assessments and related charges, despite having prevented [Harvest Assets] from pursuing its own rights and claims for relief as the tax sale purchaser of the Property.

However, the trial court further held that "because of the present status of this case" in which the Association was no longer seeking to redeem the property, the court would set aside the Consent Order so that Harvest Assets could complete foreclosure of its right to redeem the property, and the Association could seek payment of condominium association assessments "from the date of the entry of [the June 2017

Order] forward." The trial court entered final judgment in September 2017, and this appeal by the Association followed.

On appeal, the Association challenges the trial court's ruling in the June 2017 Order that it was not entitled to collect unpaid condominium association assessments from Harvest Assets that had accrued up to that point during the pendency of the litigation.[3] According to the Association, the trial court erred in concluding that it could not collect those unpaid condominium association assessments from Harvest Assets based on the Consent Order and general equitable principles. We agree with the Association.

1. *The Consent Order.* The trial court erred in ruling that based on the Consent Order, the Association was not entitled to collect unpaid condominium association assessments that had accrued during the litigation. As we have explained:

> A consent order is essentially a binding agreement of the parties that is sanctioned by a court, and it is subject to the rules governing the interpretation and enforcement of contracts. Accordingly, a consent order can be construed according to the general rules of contract

---

[3] The Association does not challenge the trial court's ruling in the June 2017 Order that the Association could not collect attorney fees, late fees, or interest on the unpaid condominium assessments that had accrued prior to June 2017. The trial court's ruling on attorney fees, late fees, and interest therefore is affirmed.

10

construction. Furthermore, where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance. The construction of a contract is a question of law for the court, and we apply a de novo standard of review on appeal.

(Footnote and punctuation omitted.) *Olympus Media v. City of Dunwoody*, 335 Ga. App. 62, 66 (1) (780 SE2d 108) (2015).

As previously noted, the trial court ruled that the Association was barred from collecting condominium association assessments from Harvest Assets that had accrued during the pendency of the litigation "under the very language of the Consent Order." However, the plain and unambiguous language of the Consent Order did not bar the collection of those assessments from Harvest Assets by the Association as part of the instant litigation. Rather, the Consent Order simply provided that the Association would "take no action *outside the confines of this case* to collect or otherwise enforce its claim to condominium assessments or related charges[.]" (Emphasis supplied.) Hence, the Consent Order prohibited the Association from pursuing collection efforts against Harvest Assets outside of the pending litigation, but nothing in the language of the Consent Order reflects a waiver by the Association of its right to seek accrued, unpaid condominium association assessments from

11

Harvest Assets as part of the current lawsuit. Accordingly, the trial court erred in relying on the language of the Consent Order to bar the Association from seeking the unpaid assessments from Harvest Assets in this case.

2. *General Equitable Principles.* The trial court also erred in concluding that the Association was barred from seeking the unpaid assessments based on general principles of equity. It is true that trial courts have "broad discretion to fashion an equitable remedy based upon the exigencies of the case." *Barngrover v. City of Columbus*, 292 Ga. 486, 489 (1) (739 SE2d 377) (2013). But

> the first maxim of equity is that equity follows the law. Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law.

(Citation and punctuation omitted.) *Hopkins v. Virginia Highland Assoc.*, 247 Ga. App. 243, 249 (1) (541 SE2d 386) (2000). See *Wallace v. Wallace*, 301 Ga. 195, 199 (II) (800 SE2d 303) (2017). See also *Cooksey v. Landry*, 295 Ga. 430, 432 (2) (761 SE2d 61) (2014) ("The first maxim of equity is that equity follows the law. Equity

12

cannot, therefore, override the positive enactments of the statutes.") (citation and punctuation omitted).

Our law is clear that a tax deed purchaser of property is obligated to pay homeowners association assessments that accrue after the sale, even during the period before the purchaser can foreclose on the right of redemption. See *Canady v. Cumberland Harbour Property Owners Assn.*, 340 Ga. App. 439, 443 (1) (797 SE2d 674) (2017); *Harvest Assets I*, 340 Ga. App. at 238; *Croft*, 276 Ga. App. at 314 (1). As we have explained, the tax deed purchaser acquires defeasible title upon purchase of the property at the tax sale, which is "sufficient to trigger automatic membership in the [a]ssociation, and render him liable for the assessments even during the time in which the property might be redeemed." (Citation and punctuation omitted.) *Canady*, 340 Ga. App. at 443 (1). See *Croft*, 276 Ga. App. at 313-314 (1). And we have noted that assessments and fees paid to a homeowners association benefit the tax deed purchaser by "increas[ing] the value of the property purchased at the sale," such that the purchaser should "pay a proportional share of the cost of these benefits." Id. at 314 (1).

Furthermore, OCGA § 44-3-80 (d) of the Georgia Condominium Act provides in relevant part:

> [N]o unit owner other than the association shall be exempted from any liability for any assessment under this Code section or under any condominium instrument *for any reason whatsoever*, including, without limitation, abandonment, nonuse, or waiver of the use or enjoyment of his or her unit or any part of the common elements.

(Emphasis supplied.) Based on the plain language of this statutory subsection, we have held that "[t]here is no legal justification for a condominium owner to fail to pay valid condominium assessments," and that "[t]he public policy expressed in the statute assures that fulfillment of obligations and the functioning of a condominium association as a whole not be jeopardized or compromised by individual disputes, which may or may not be meritorious." *Forest Villas Condo. Assn. v. Camerio*, 205 Ga. App. 617, 619 (1) (422 SE2d 884) (1992). See *Atlanta Georgetown Condo. Assn. v. Chaplin*, 235 Ga. App. 460, 461 (1) (509 SE2d 729) (1998).

Accordingly, under well-established legal principles, Harvest Assets, as a tax deed purchaser with an ownership interest in the condominium unit at issue, was obligated to pay condominium association assessments that accrued after the tax sale, even during the period before it could foreclose on the right of redemption, and even

14

if it was involved in an ongoing dispute with the Association.[4] Because "[it] is a basic maxim that equity is ancillary, not antagonistic, to the law" and cannot be used to alter established legal rights, the trial court erred in relying on general equitable principles to conclude that the Association could not recover the unpaid, accrued condominium association assessments. (Citation and punctuation omitted.) *Dept. of Transp. v. American Ins. Co.*, 268 Ga. 505, 509 (4) (491 SE2d 328) (1997).

For these combined reasons, the trial court erred in ruling that the Association could not recover condominium association assessments from Harvest Assets that had accrued during the lawsuit until entry of the June 2017 order based on the consent order and equitable principles. Consequently, we reverse the trial court's denial of summary judgment to the Association on its claim for unpaid assessments, reverse the

---

[4] The Association was within its rights to voluntarily dismiss its claim seeking redemption of the property while its other claims remained pending because OCGA § 9-11-15 (a) expressly allows a plaintiff to "amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." See *Community & Southern Bank v. Lovell*, __ Ga. __ (2) (807 SE2d 444) (2017); *Young v. Rider*, 208 Ga. App. 147, 148 (2) (430 SE2d 117) (1993) ("Where less than all of a plaintiff's claims are added or dropped, the additions and deletions are not dismissals and renewals governed by [Section] 9-11-41 (a)[,] but simply amendments governed by the liberal amendment rules of [Section] 9-11-15 (a) . . . . "). Moreover, the trial court rejected Harvest Assets's argument that the Association's dismissal of its claim for redemption of the property was done in bad faith, lacked substantial justification, or was interposed for delay or harassment, leading the court to deny Harvest Assets's request for attorney fees under OCGA § 9-15-14 (b).

trial court's grant of a declaratory judgment to Harvest Assets on the same issue,[5] and remand with direction that the trial court grant summary judgment to the Association on its claim for unpaid assessments and for further action consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. McMillian and Reese, JJ., concur.*

---

[5] Our conclusion that the trial court erred in denying summary judgment to the Association on the assessments issue necessitates that we likewise reverse the trial court's grant of a declaratory judgment in favor of Harvest Assets on the same issue. We express no opinion as to whether a declaratory judgment claim was a proper procedural vehicle for resolving any of the issues raised in this case.