**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 9, 2022**

# In the Court of Appeals of Georgia

A22A0484. PARRISH et al v. ST. JOSEPH'S/CANDLER HEALTH SYSTEM, INC. et al.

GOBEIL, Judge.

Jason Parrish, in his capacity as parent of minor child S. P., consented to an order dismissing with prejudice S. P.'s wrongful death claims against two defendants in this multi-party medical malpractice/wrongful death litigation. Later, represented by new counsel, Parrish moved to vacate that order, claiming that his former counsel had mistakenly believed S. P.'s wrongful death claims were time-barred. The trial court denied the motion to vacate, but issued a certificate of immediate review. Parrish filed an application for interlocutory review, which we granted. In the instant appeal, Parrish contends that the trial court erred in denying his motion to vacate the consent order because the court: (1) failed to conduct a substantive analysis or weigh

the relative benefit and harm to the parties; (2) erroneously interpreted its duty to protect the interests of a minor child; (3) failed to consider that there is a legitimate basis for vacating the order, as the statute of limitation for S. P.'s claims has not expired; and (4) wrongly declined to exercise its equitable powers, given the compelling and unique facts of this case. For the reasons that follow, we affirm.

The record shows that Heather Ruggles went into cardiac arrest and died during childbirth on September 29, 2016, at Candler Hospital in Savannah. Her baby, S. P., was successfully delivered by C-section. After an autopsy, the cause of Ruggles's death was determined to be acute toxicity from a local anesthetic, Bupivacaine, administered in conjunction with her epidural. Ruggles was unmarried at the time, but was engaged to S. P.'s father, Parrish. Parrish is the administrator of Ruggles's estate.

In December 2017, in his capacities as administrator of the estate and parent of S. P., Parrish filed this medical malpractice/wrongful death action against St. Joseph's/Candler Health System, Inc., and three nurses involved in Ruggles's care. In June 2019, Parrish filed a motion to add as party-defendants Michael Marshall, M.D. and Mary Finn, M.D., two anesthesiologists responsible for the epidural. The trial court granted the motion, and in August 2019, Parrish filed an amended

2

complaint asserting both wrongful death and estate claims against those defendants.[1]

In particular, Parrish alleged that Marshall and Finn failed to identify the source of Ruggles's cardiac arrest as local anesthetic system toxicity and failed to administer the standard treatment for that condition.

In September 2019, Marshall and Finn filed separate motions to dismiss S. P.'s newly added wrongful death claims against them, arguing that those claims were barred by OCGA § 9-3-71 (a)'s two-year statute of limitation for medical malpractice claims. Parrish's lawyer did not respond to the motions to dismiss. Instead, he consented to the entry of an October 2019 order dismissing the claims with prejudice. The consent order noted that Marshall and Finn had moved to dismiss the claims as time-barred and that Plaintiff "agreed that [S. P.'s] wrongful death claims against [Marshall and Finn] should be dismissed," but the order did not address the merits of the statute of limitation defense. The order further noted that the estate's claims

---

[1] "(A)n individual's claim for wrongful death of a spouse or [parent] and an estate's claim for the decedent's pain and suffering are distinct causes of action." *Hall v. Hill*, 360 Ga. App. 635, 641 (1) (c) (859 SE2d 897) (2021) (citation and punctuation omitted). In a wrongful death claim, the surviving spouse or child may assert a claim for the homicide of the decedent and may recover "the full value of the life of the decedent." OCGA § 51-4-2 (a). The estate may assert a separate claim for the decedent's pain and suffering. See *Mays v. Kroger Co.*, 306 Ga. App. 305, 306 (701 SE2d 909) (2010).

against Marshall and Finn remained pending, as did all other claims brought by S. P. and the estate against the hospital and three nurses.

In November 2019, Parrish's present counsel entered an appearance in the case as co-counsel. With the court's permission, Parrish later added additional vicarious liability claims against Marshall and Finn's professional corporation, Obstetric Anesthesia & Pain Consultants ("OAPC"). In January 2021, Parrish's original counsel withdrew from representation. Present counsel claims that he only discovered that S. P.'s wrongful death claims against Marshall and Finn had been dismissed with prejudice per the October 2019 consent order after Marshall alerted him to this fact in a letter dated January 22, 2021. Present counsel began researching the statute of limitation issue and concluded that the claims in question were not time-barred because of a minority tolling provision in OCGA § 9-3-73 (b). Accordingly, in March 2021, present counsel filed a motion to vacate the consent order, arguing that (1) S. P.'s wrongful death claims against Marshall and Finn were not time-barred; (2) the court should not have entered the consent order without considering the consequences to the minor child, S. P.; and (3) vacating the consent order would not prejudice Marshall and Finn because the estate's claims against them remain pending.

A new trial court judge heard the motion as the original judge had retired. As an initial matter, the trial court questioned why the October 2019 consent agreement between the parties "was made an order of the [c]ourt at all," because (1) the order did not resolve all the claims against Marshall and Finn, and thus leave of court was not required under OCGA § 9-11-21; and (2) there was no settlement between the parties. The new judge highlighted that he "was not privy to any discussions regarding the entry of the consent order." In any case, the court acknowledged that the order at issue had been consented to and signed by all parties, as well as the trial judge presiding over the case at the time. The judge continued that while he had discretion to vacate the consent order, he was

> persuaded by the Defendants' argument that the Plaintiff willingly and knowingly entered into this agreement to dismiss these claims "with prejudice" seventeen months ago. The Plaintiff obtained the benefit of avoiding potentially significant motion practice and agreed to provide finality to the Defendants as to these claims. The length of the delay and the benefit derived as a result of the agreement convince this Court that it is proper to allow the order to remain in place.

The judge further noted that Parrish's "change in strategy more than a year and a half later is not compelling and fails to convince this [c]ourt to exercise its discretion and vacate the prior order." With respect to Parrish's argument that the court should have

safeguarded S. P.'s rights, the judge ruled that "a simple consent agreement such as this" did not require judicial approval and it did not implicate the court's duty to protect the interests of the child. The court did not address the merits of Parrish's statute of limitation argument. At Parrish's request, the court certified its order for immediate review. Parrish filed an application for interlocutory review, which we granted. See Case No. A22I0033 (Sept. 28, 2021). This timely appeal followed.

As an initial matter, the trial court was correct that it had the authority to vacate the 2019 consent order because it was an interlocutory order that adjudicated fewer than all claims in the case. See *Hudson v. Godowns*, 320 Ga. App. 157, 159 (2) (739 SE2d 462) (2013) ("An order adjudicating fewer than all the claims is not final . . . and is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.") (citation and punctuation omitted). See also OCGA § 9-11-54 (b).

Generally, we review the trial court's ruling on a motion to vacate an interlocutory order for abuse of discretion. See *Bradley v. Tattnall Bank*, 170 Ga. App. 821, 823 (1) (318 SE2d 657) (1984) ("while a judge should be cautious about overruling prior orders of another judge in the same case[,] nevertheless, he may do so in the exercise of sound discretion and particularly if he is convinced that such

6

action is dictated by the interests of justice") (citation and punctuation omitted). Although this standard of review is deferential, "it is not toothless." *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 347 Ga. App. 567, 576 (2) (c) (820 SE2d 197) (2018) (citation and punctuation omitted). See also *Intl. Harvester Co. v. Cunningham*, 245 Ga. App. 736, 739 (1) (538 SE2d 82) (2000) (trial court's exercise of discretion "must be based on sound legal analysis"). With these guiding principles in mind, we now turn to Parrish's specific claims of error.

1. Parrish contends that the trial court failed to conduct a substantive analysis or weigh the relative benefit and harm to the parties before denying the motion to vacate the consent order. He argues that the court's "sole basis" for denying relief was the length of time (17 months) between the entry of the consent order in October 2019, and the filing of the motion to vacate in March 2021. Parrish also challenges the court's characterization that former counsel's consent to the dismissal order constituted a calculated decision that benefitted S. P., and present counsel's motion to vacate as a belated "change of strategy." For the reasons that follow, we find no reversible error.

Like the trial court, we begin our analysis by considering the nature of the October 2019 order, styled as a "Consent Order Dismissing Plaintiff's Wrongful-

Death Claim." Here, the 2019 consent order does not resemble a traditional settlement, as Marshall and Finn admitted no liability and made no litigation concessions; and Parrish and S. P. received no money. Nevertheless, as highlighted by the trial court in its order denying the motion to vacate, the order at issue was consented to and signed by all parties, and, at the parties' request, the agreement was adopted by and decreed to be an order of the trial court. As we have explained:

> A consent order is essentially a binding agreement of the parties that is sanctioned by a court, and it is subject to the rules governing the interpretation and enforcement of contracts. Accordingly, a consent order can be construed according to the general rules of contract construction. Furthermore, where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance.

*Northlake Manor Condo. Assn., Inc. v. Harvest Assets, LLC*, 345 Ga. App. 575, 580-581 (1) (812 SE2d 658) (2018) (citation and punctuation omitted).

> [I]t is generally accepted that a consent judgment differs from a judgment rendered on the merits in that it results from an affirmative act of the parties rather than the considered judgment of the court following litigation of the issues. A consent judgment is one entered into by stipulation of the parties with the intention of resolving a dispute, and generally is brought to the court by the parties so that it may be entered by the court, thereby compromising and settling an action. Although a

8

consent judgment is brought about by agreement of the parties, it is accorded the weight and finality of a judgment. Thus, a consent decree is an enforceable judgment and can be accorded preclusive effect.

*Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 423-424 (3) (627 SE2d 549) (2006) (citations and punctuation omitted). As previously stated, a trial court retains authority to modify "interlocutory order[s] that remain[ ] within the breast of the court until entry of final judgment." *Rudd v. Paden*, 279 Ga. App. 141, 145 (3) (630 SE2d 648) (2006).

Parrish maintains that former counsel's consent to the dismissal of S. P.'s wrongful death claims against Marshall and Finn was not strategic, but was instead based on a mistaken belief of law that these claims were time-barred. Importantly, Parrish does not allege that the trial court lacked jurisdiction to enter the consent order, or that it was procured by fraud, coercion, duress, or otherwise void. Nor is there any indication that the consent order's dismissal of S. P.'s claims against the two doctors with prejudice was a scrivener's error, or that Parrish moved to correct and rescind the voluntary dismissal with prejudice under OCGA § 9-11-60 (g).[2] See

---

[2] OCGA § 9-11-60 (g) provides: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party

9

*Sanson v. State Farm Fire & Cas. Co.*, 276 Ga. App. 555, 556 (623 SE2d 743) (2005) (concluding that the trial court abused its discretion by denying a party's motion to rescind a dismissal with prejudice, pursuant to OCGA § 9-11-60 (g), when the facts "demonstrate[d] that a clerical error was made by mutual mistake of the parties, resulting in an erroneous judgment — the dismissal with prejudice"); *Mullinax v. State Farm Mut. Auto. Ins. Co.*, 303 Ga. App. 76, 77, 79 (2) (692 SE2d 734) (2010) (holding that the trial court abused its discretion by not allowing insureds to rescind their dismissal of action against defendant with prejudice, in which counsel submitted affidavits indicating that insureds did not intend to dismiss the complaint with prejudice).

"Both parties signed the [consent order], and the [order] became a binding contract between the parties. Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract unless prohibited by statute or public policy." *State Farm Fire & Cas. Ins. Co. v. Terry*, 230 Ga. App. 12, 14 (2) (495 SE2d 66) (1997) (citation and punctuation omitted); *Hunter v. Schroeder*, 186 Ga. App. 799, 800 (368 SE2d 561) (1988) (malpractice suit settled by consent order dismissing the action with prejudice). "The law is well settled that fraud cannot be predicated

and after such notice, if any, as the court orders."

10

upon misrepresentations of law or misrepresentations as to matters of law. It is also well settled that a simple mistake by a party as to the legal result of an act which he performs is no ground for either defensive or affirmative relief." *Joyner v. Leaphart*, 358 Ga. App. 383, 388 (6) (853 SE2d 407) (2021) (citation and punctuation omitted); *Brown v. RAC Acceptance East, LLC*, 303 Ga. 172, 177 (2) (c) (809 SE2d 801) (2018) ("fraud and a mistake of law are not cut from the same cloth") (citation and punctuation omitted). See generally *Dept. of Transp. v. Revco Discount Drug Centers, Inc.*, 322 Ga. App. 873, 873, 877 (1) (746 SE2d 631) (2013) (plaintiff who mistakenly dismissed subsequent lawsuit with prejudice instead of without prejudice was barred by res judicata from pursuing claims in earlier lawsuit although parties had agreed to allow plaintiff to intervene in earlier lawsuit, and trial court had entered an order allowing plaintiff to intervene and directing plaintiff to dismiss its subsequent lawsuit).

There is no doubt that the consent order disadvantaged S. P. by dismissing *with prejudice* her wrongful death claims against the two defendants that she alleges are primarily responsible for her mother's death. Parrish highlights that reinstating S. P.'s wrongful death claims would not prejudice Marshall and Finn because, as noted in the consent order, the estate's claims against Marshall and Finn remain

11

pending below, as do all of the other claims brought by S. P. and the estate against the hospital, three nurses, and Marshall and Finn's corporation, OAPC. However, based on the record before us, S. P., represented by legal counsel and her father, voluntarily entered into the consent order dismissing the claims against Marshall and Finn. The original trial court judge approved the consent order based on the representations of both parties, and Parrish has failed to cite to any legal authority to support his assertion that the court had an independent duty to verify the parties' joint statement that the statute of limitation had run on S. P.'s claims against Marshall and Finn.

Because the consent order remains intact, Marshall and Finn "[are] entitled to rely on [their] rights as established in the consent order," namely, the dismissal of S. P.'s wrongful death claims against them with prejudice. *Olympus Media, LLC v. City of Dunwoody*, 335 Ga. App. 62, 69 (2) (780 SE2d 108) (2015). In short, Parrish has failed to support his assertion that the trial court was required to conduct a more thorough analysis or weigh any specific factors prior to entering the consent order presented by both parties. Under these circumstances, we cannot say that the trial court abused its discretion in denying Parrish's motion to vacate the 2019 consent order. See generally *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) (a proper application of abuse-of-discretion review recognizes that there is a

12

"range of possible conclusions the trial judge may reach" and that this Court often will affirm a trial court ruling under an abuse-of-discretion standard "even though we would have gone the other way had it been our call") (citation and punctuation omitted); *McDonald v. Garden Svcs., Inc.*, 163 Ga. App. 851, 852-853 (295 SE2d 551) (1982) (absent an abuse of discretion, this Court will not substitute its judgment for the trial court's, even if individual members of this Court may have reached a different conclusion).

2. Parrish contends that the trial court did not properly interpret its independent duty to protect the substantial rights of a minor. Relying primarily on OCGA § 9-11-17 (c) and our Supreme Court's holding in *Mosley v. Lankford*, 244 Ga. 409 (260 SE2d 322) (1979), Parrish argues that the trial court failed to fulfill its role in protecting the interests of a minor by approving the consent order dismissing the claims against the two doctors without first examining whether S. P.'s claims were indeed barred the statute of limitation. However, his reliance on these authorities is misplaced.

OCGA § 9-11-17 (c) provides in pertinent part that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person *not otherwise represented in an action* or shall make such other order as it deems proper for the protection of the

13

infant or incompetent person." (Emphasis supplied.) In this case, as previously stated, S. P. was represented by both her father and counsel. As a result, the court had no reason to appoint another representative on behalf of S. P.

Similarly, *Mosley* does not support Parrish's contention. In that case, a minor was injured in an automobile accident, and his father filed suit as next friend. *Mosley*, 244 Ga. at 409. Although initially represented by counsel, the minor's lawyer later withdrew from the case. Id. When the case was called for trial, no one appeared at trial on the child's behalf, and the court dismissed the case for want of prosecution. Id. The minor's mother later attempted to set aside the dismissal, which the trial court denied. Id. at 409-410. In reversing, our Supreme Court held that "[b]ecause the minor was not represented at the call of the case, it was incumbent upon the trial court in the original action to appoint a guardian ad litem or make such other order as it (deemed) proper for the protection of the infant[.]" Id. at 411. The instant case is readily distinguishable in that S. P. was represented by both her father and attorney at the time the consent order was executed.

We are also unpersuaded by Parrish's unsupported allegation that the trial court had "an independent duty to protect [S. P.'s] interests when [her] guardian or counsel [did] not." As highlighted by Marshall and Finn, Parrish's "position would create an

14

obligation of every trial court to practice law on behalf of the minor claimants . . . to determine if there is any colorable, novel claim that the parties *might* be overlooking that could *conceivably* apply to the minor child's situation." Even though S. P. was a minor when she entered into the consent order, there is no dispute that she was represented by counsel and a legal guardian, her father, at the time of the agreement's execution. "Although a minor is required to appear through a guardian or next friend, the minor is the real party in interest, and the guardian or next friend is merely an officer of the court to protect the rights of the minor who is considered incapable of managing his own affairs." *Clements v. Phillips*, 235 Ga. App. 588, 589 (1) (510 SE2d 311) (1998) (citation and punctuation omitted).

> The authority of one who acts as next friend for a minor in a judicial proceeding is derived from the permission of the court to act in that capacity. No particular person is required to act, nor is it necessary that the person so acting be appointed by formal order. The court, in allowing the case to proceed, is presumed to have approved the appearance of the person acting as next friend.

*Tillett v. Patel*, 192 Ga. App. 60, 60 (1) (383 SE2d 622) (1989) (citation and punctuation omitted). "A next friend cannot unreasonably surrender a minor's substantial rights. But the next friend must not be denied such necessary incidental

15

powers as will facilitate the fair adjudication of the infant's rights. This is necessary to their proper vindication, both in prosecution and defense." Id. at 60-61 (1) (citation and punctuation omitted).

Like the trial court, we "[were] not privy to any discussions regarding the entry of the consent order," nor do we have any insight as to why S. P.'s counsel elected to agree to the dismissal of her claims against Marshall and Finn with prejudice. Again, Parrish has failed to point to any duty on the part of the trial court to question the terms of the consent order where the record shows that both parties freely and voluntarily entered into the agreement. In its order denying the motion to vacate the consent order, the court specifically noted that it had considered the underlying motions, related briefing, and the parties' arguments at oral argument. See *Blackmore v. Blackmore*, 311 Ga. App. 885, 890 (5) (717 SE2d 504) (2011) ("Upon appellate review, we presume that the trial court properly considered all of the evidence before it."). Based on the record, we have no basis to conclude that the trial court failed to fulfill its obligations under OCGA § 9-11-17 (c) or that it abused its discretion in denying the motion to vacate the consent order.

3. Parrish asserts that the trial court failed to consider that there is a legitimate basis for vacating the order, as the statute of limitation for S. P.'s claims against the

16

two doctors has not expired. Parrish alleges that the trial court erred by failing to reach the "critical substantive issue" of the statute of limitation "that deserves judicial review." We find no error.

As discussed in Division 1, we have no reason to disturb the trial court's denial of Parrish's motion to vacate the consent order based on the parties' mutual representation to the court that S. P.'s wrongful death claims against the two doctors should be dismissed as barred by the statute of limitation. Because the court never considered S. P.'s statute of limitation argument, it never ruled upon it. See *Auto-Owners Ins. Co. v. Hale Haven Props., Inc.*, 346 Ga. App. 39, 53-54 (3) (a) (815 SE2d 574) (2018) ("Although both parties' timeliness arguments were raised in the trial court, the record does not show that the trial court addressed them. Thus, if we were to conclude that the trial court erred, it would be on account of an issue never ruled on below.") (citation and punctuation omitted). Indeed, without a ruling on this specific question, the issue is outside the proper scope of our review. See *Piedmont Hosp. v. D. M.*, 335 Ga. App. 442, 449 (3) (779 SE2d 36) (2015) ("Here, the trial court expressly declined to rule on the issue of whether [the appellants] are equitably estopped from asserting a statute of repose defense based on its erroneous determination that no medical malpractice claims remained. Because the trial court

17

did not reach the issue of equitable estoppel in denying the motions for summary judgment, we find that the issue is outside the proper scope of our review in this appeal."). We therefore need not reach Parrish's arguments about the statute of limitation of S. P.'s wrongful death claims.[3]

4. Finally, Parrish argues that the trial court erred by declining to exercise its equitable powers to grant relief "given the compelling and unique facts of this case." But Parrish fails to show that the trial court should have vacated the consent order on this basis.

"[Georgia's] Constitution vests general equitable powers in the superior court." *Brown v. Liberty Oil & Refining Corp.*, 261 Ga. 214, 215-216 (2) (b) (403 SE2d 806) (1991) (footnote omitted). Specifically, our Constitution provides:

> The superior courts shall have jurisdiction in all cases, except as otherwise provided in this Constitution. They shall have exclusive jurisdiction over trials in felony cases, except in the case of juvenile offenders as provided by law; in cases respecting title to land; and in

---

[3] We also need not address Parrish's alternate argument that the trial court could have found that S. P.'s wrongful death claims against Marshall and Finn relate back to the original complaint under OCGA § 9-11-15 (c) because this issue was not raised in the trial court. See *Smith v. City of Roswell*, 361 Ga. App. 853, 857 (2) (a) (864 SE2d 175) (2021) ("Appellate courts do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them.") (citation and punctuation omitted).

18

divorce cases. They shall have concurrent jurisdiction with the state-wide business court in equity cases.

Ga. Const. of 1983, Art. VI, Sec. IV, Par. I. See also *Allen v. Allen*, 260 Ga. 777, 779 (3) n. 2 (400 SE2d 15) (1991) (when the legislature conferred equity powers upon superior courts in 1799, it adopted the whole system of English jurisprudence, common law, and chancery).

However, equity jurisdiction is only available in certain circumstances. Under OCGA § 23-1-3, "[e]quity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done." Significantly, to invoke the equity jurisdiction of a court, "a party . . . must first identify some legally cognizable 'wrong' or 'injury' that needs to be remedied." *Williford v. Brown*, 299 Ga. 15, 18 (3) (785 SE2d 864) (2016) (punctuation omitted). As this Court has held, a trial court has "broad discretion to fashion an equitable remedy based upon the exigencies of the case, and an appellate court sustains the trial court's action where such discretion has not been abused." *Tafel v. Lion Antique Cars & Investments, Inc.*, 297 Ga. 334, 339 (4) (773 SE2d 743) (2015) (citation and punctuation omitted). But, as our Supreme Court has clarified:

[T]he first maxim of equity is that equity follows the law. Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law.

*Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998) (citations and punctuation omitted).

In support of his argument that the trial court should have exercised its equitable powers to vacate the consent order, Parrish relies on *Brown*, 261 Ga. at 214-216, and its progeny. In those cases, we examined the applicability of the equitable exception to exclusive spousal standing to bring wrongful death actions under Georgia's Wrongful Death Act, OCGA § 51-4-1 et seq. See *Brown*, 261 Ga. at 215-216 (2) (concluding that exercise of the trial court's equitable powers was demanded to allow the decedent's minor children to proceed as claimants under the wrongful death statute; even though the statute conferred exclusive standing upon the surviving spouse and further required the surviving spouse to share the proceeds with the decedent's children, the children/claimants had been abandoned by the surviving spouse). See also *Emory Univ. v. Dorsey*, 207 Ga. App. 808, 809-810 (2) (429 SE2d

307) (1993) (finding that minor child of decedent could pursue wrongful death action, notwithstanding fact that decedent had surviving spouse, where surviving spouse had left the state shortly after decedent's death, had no intention of pursuing a wrongful death action, and had no blood or legal relationship with the child); *Belluso v. Tant*, 258 Ga. App. 453, 455 (574 SE2d 595) (2002) ("it is within the equitable powers of the superior court to permit the prosecution of the wrongful death action by a parent when the surviving spouse is the alleged wrongdoer"). In a recent decision, *Connell v. Hamon*, 361 Ga. App. 830, 838 (863 SE2d 744) (2021), also cited by Parrish, we clarified that "no Georgia statute or case gives adult children a right to file a wrongful death action to recover damages for the death of a parent even if a surviving spouse declines to exercise his or her right to bring such an action." In *Connell*, there was no indication in the record that the decedent's surviving spouse (and plaintiff's mother) could not be found or had abandoned a legal obligation to support the plaintiff, an adult child. Id. at 835.

In contrast to these cases, there is no dispute that S. P., as the sole surviving child of Ruggles (who was unmarried at the time of her death), had standing to bring a wrongful death claim on behalf of her mother. However, she voluntarily relinquished those claims by entering into the consent order. Assuming, without

deciding, that S. P.'s prior counsel entered into the consent order — agreeing to dismiss her wrongful death claims against Marshall and Finn — based on his mistaken belief that the statute of limitation had run on these claims, Parrish fails to provide any support for his argument that the trial court should have exercised its equitable powers to vacate the consent order. See OCGA § 23-2-27 ("Mere ignorance of the law on the part of the party himself, where the facts are all known and there is no misplaced confidence and no artifice, deception, or fraudulent practice is used by the other party either to induce the mistake of law or to prevent its correction, shall not authorize the intervention of equity.").

Based on the foregoing, we affirm the trial court's denial of Parrish's motion to vacate the consent order.

*Judgment affirmed. McFadden, P. J., and Pinson, J., concur.*

22